IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


STEVEN D. BRAUN,

        Plaintiff,

     vs.                          **Case No. 11-2180-RDR**

PROMISE REGIONAL MEDICAL
CENTER-HUTCHINSON, INC.,

        Defendant.

_____

**MEMORANDUM AND ORDER**

    This case is before the court upon defendant's motion to dismiss plaintiff's amended complaint under FED.R.CIV.P. 12(b)(6) and/or for judgment on the pleadings under FED.R.CIV.P. 12(c). Doc. No. 17.  Because the motion contains a "statement of facts" and makes citation to materials outside the amended complaint, the motion is arguably in the nature of a summary judgment motion. This is important for at least two reasons.  First, plaintiff requests that the court defer ruling upon the motion and give plaintiff time to conduct discovery, as permitted under some circumstances by the summary judgment rule.  FED.R.CIV.P. 56(f). Second, if matters outside the pleadings are presented with Rule 12(b)(6) or 12(c) motions and not excluded by the court, then the motions must be treated as summary judgment motions under Rule 56. FED.R.CIV.P. 12(d).  It should also be noted that a 12(c) motion is arguably premature in this instance because the rule states that 12(c) motions may be brought "[a]fter the pleadings have closed."

FED.R.CIV.P. 12(c).  Defendant has not filed an answer in this case.  So, the pleadings have not closed.

After reviewing the pleadings and exhibits, the court believes the best course in this case is to treat defendant's motion as a motion to dismiss for failure to state a claim under Rule 12(b)(6) rather than as a motion for summary judgment.  If the court treated defendant's motion as a summary judgment motion, additional time for discovery would be justified and the pleadings would need to be reformulated to suit the format for a summary judgment motion.  The court sees no advantage to taking those steps now as opposed to progressing through the normal processes of pretrial case management.

I.  Legal standards

The legal standards applied to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c) are the same.  See Corder v. Lewis Palmer School District, 566 F.3d 1219, 1223-24 (10th Cir.) cert. denied, 130 S.Ct. 742 (2009).  Under these standards, the court accepts the factual allegations in the amended complaint as true and draws reasonable inferences in favor of plaintiff.  Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008).  The complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 570 (2007).  "'[P]lausibility' in this context must refer to the scope of the allegations in a

2

complaint:  if they are so general that they encompass a wide swath
of  conduct,  much  of  it  innocent,  then  the  plaintiffs  'have  not
nudged  their  claims  across  the  line  from  conceivable  to
plausible.'"  Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir.
2008) (quoting Twombly, 550 U.S. at 570).  "A claim has facial
plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S.
662, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is
not akin to a 'probability requirement,' but it asks for more than
a sheer possibility that a defendant has acted unlawfully."  Id.
(quoting Twombly, 550 U.S. at 556).  Thus, "where the well-pleaded
facts  do  not  permit  the  court  to  infer  more  than  the  mere
possibility of misconduct, the complaint has alleged — but it has
not 'show[n]' — 'that the pleader is entitled to relief.'"  Id. at
1950 (quoting Fed.R.Civ.P. 8(a)(2)).

     II.  Allegations within the amended complaint

     The amended complaint alleges that plaintiff and defendant had
a valid contract dated May 27, 1997 which provided that plaintiff
would  act  as  Medical  Director  of  the  Department  of  Radiation
Oncology at the Chalmer's Cancer Treatment Center, a facility owned
by defendant.  Doc. No. 10 at ¶ 4.  From April 30, 2008 through
December 22, 2010, plaintiff performed medical director services
including, but not limited to, promoting the practice, representing

the hospital at medical staff meetings, training and educating the medical staff and clergy, contacting referring physicians, supervising staff and community outreach. Id. at ¶ 5.

The contract required 90 days written notice of termination prior to May 31 of any particular year. Id. at ¶ 12. Defendant sent a letter to plaintiff dated January 2008, requesting a response to a proposal from defendant. Id. at ¶ 13. A letter was sent by defendant on April 1, 2008 notifying plaintiff that because there was no response, the contract would be terminated on April 30, 2008. Id. at ¶ 14. But, the complaint alleges that "the contract was not terminated as evidenced by conduct of the parties." Id. at ¶ 15. According to the complaint, "[d]efendant's conduct in utilizing [p]laintiff's medical director services until December 22, 2010 extended the original agreement." Id. at ¶ 15-2.[1]

The complaint further alleges that defendant had knowledge of and accepted plaintiff's services as medical director by billing for the time, observing plaintiff at meetings, "associating with plaintiff" in advertising and patient brochures, and receiving plaintiff's time sheets. Id. at ¶ 6. Defendant, however, has not compensated plaintiff for the time spent performing medical director services since April 30, 2008. Id. at ¶ 7.

_____

[1] There are two paragraphs numbered "15" in the amended complaint. This information comes from the second paragraph "15".

4

On or about March 2009, plaintiff received an offer from another entity which included a letter of intent and would have provided economic benefit to plaintiff.  Id. at ¶ 19.  Defendant insisted that plaintiff not agree to the offer because defendant was in the process of working out an arrangement with plaintiff. Id. at ¶ 21.  Defendant had knowledge that this offer would be detrimental to its profits and misled plaintiff into declining the offer.  Id. at ¶ 22.  The amended complaint asserts that defendant made misrepresentations with the intent of keeping plaintiff from leaving the hospital and competing at another facility.  Id. at ¶ 24.

III.   Plaintiff's legal claims

The amended complaint makes three claims for relief: 1) unjust enrichment for services plaintiff provided as medical director since April 30, 2008 without reimbursement from defendant; 2) breach of contract for failing to pay plaintiff for those services; and 3) tortious interference with a prospective business advantage.

IV.   Arguments and analysis

A.   Unjust enrichment

Plaintiff's first claim in the complaint is for unjust enrichment.  In order to establish this claim, plaintiff must prove:

> 1) a benefit conferred upon the defendant by the plaintiff; 2) an appreciation or knowledge of the benefit by the defendant; and 3) the acceptance or retention by the defendant of the benefit under such circumstances as

5

> to make it inequitable for the defendant to retain the
> benefit without payment of its value.

Haz-Mat Response, Inc. v. Certified Waste Services Ltd., 910 P.2d

839, 847 (Kan. 1996) (quoting J.W. Thompson Co. v. Welles Products

Corp., 758 P.2d 738, 745 (1988)).

Defendant contends that plaintiff's unjust enrichment claim

must be dismissed as a matter of law for a number of reasons.

First, defendant argues that the amended complaint is insufficient

to show the essential elements that defendant knew of the services

plaintiff was providing as medical director or that defendant

accepted or retained the benefits conferred by plaintiff under such

circumstances as would make it inequitable for defendant to retain

those services without paying plaintiff for their value.   After

reviewing the amended complaint, the court finds that the

allegations in paragraphs 5, 6, 7 and 8 and the reasonable

inferences drawn therefrom state a plausible claim of knowledge and

acceptance of plaintiff's services for the purposes of an unjust

enrichment claim.

Next, defendant contends that plaintiff cannot recover under

a theory of unjust enrichment if a valid contract existed.

Plaintiff does not dispute this contention, and plaintiff has

alleged in paragraph 4 and elsewhere in the amended complaint that

plaintiff and defendant had a valid contract.   Plaintiff argues,

however, that he is entitled to make an alternative claim for

relief.   In reply, defendant does not directly deny that plaintiff

6

can make an alternative claim for relief.  In the court's view, the allegations in the amended complaint are not so contradictory that they preclude a plausible claim for unjust enrichment posed as an alternative claim for relief.  Therefore, defendant's contention does not establish that the amended complaint fails to state a claim for relief for unjust enrichment.

Defendant's third argument against plaintiff's unjust enrichment claim is that the Stark Act, 42 U.S.C. § 1395nn, precludes plaintiff's claim of unjust enrichment.  The Stark Act prohibits a physician who has a financial relationship with an entity from referring patients to that entity for the furnishing of designated health services. § 1395nn(a)(1)(A).  The Stark Act also prohibits the entity from presenting or causing to be presented a claim or bill for designated health services that were furnished pursuant to a prohibited referral. § 1395nn(a)(1)(B).  Section 1395nn(a)(2) defines "financial relationship" to include "an ownership or investment interest in the entity" or "a compensation arrangement between the physician and the entity." § 1395nn(a)(2). A "compensation arrangement" is any arrangement involving remuneration between a physician and an entity. § 1395nn(h)(1)(A).

The Stark Act contains exceptions to the broad prohibition of referrals by persons with "compensation arrangements," including an exception for "personal service arrangements."  To qualify for the exception, however, such "personal service arrangements" must,

7

among other things, be set out in writing, have a term of at least
one year, be signed by the parties, and specify the services
covered by the arrangement.   § 1395nn(e)(3)(A).   Entities are
required to report "compensation arrangements" to the Secretary of
Health and Human Services.  § 1395nn(f).  Violations of the Stark
Act can lead to significant penalties.  § 1395nn(g).

Defendant argues that allowing a recovery under the theory of
unjust enrichment would violate or frustrate the purpose of the
Stark Act because the Stark Act requires a written contract not an
"implied contract," and "a compensation arrangement arising from an
implied contract does not qualify for an exception to the Stark
Act."  Doc. No. 18 at p. 20.

At this stage in the case the court is not willing to follow
defendant's line of reasoning for the following reasons.  First,
the Stark Act does not state that it limits the authority of a
court to grant relief for unjust enrichment.  The court believes we
should hesitate to imply such a limitation because generally it is
not presumed that the common law is changed by the passage of a
statute which gives no indication that it proposes such a change.
Atkins v. U.S., 556 F.2d 1028, 1039-40 (Ct.Cl. 1977) cert. denied,
434 U.S. 1009 (1978) (citing 2A C.Sands, Sutherland Statutory
Construction § 45.12 (1973)).

Second, plaintiff's unjust enrichment claim does not
necessarily require the court to find that there was an illegal

8

agreement between the parties.  Plaintiff's unjust enrichment claim

is not asking the court to find a contract implied in fact, at

least that is not how the court construes plaintiff's claim at this

early point.  This is important because a contract implied in fact

is different from a contract implied at law or quasi contract, as

explained in Mai v. Youtsey, 646 P.2d 475, 479 (Kan. 1982)

(citations omitted):

> A contract implied in fact arises from facts and
> circumstances showing mutual intent to contract. . . . A
> contract implied in law, or quasi contract, exists
> regardless of assent.  It is a fiction of the law
> designed to prevent unjust enrichment. . . .  As this
> court stated in Sharp v. Sharp, 154 Kan. 175, 178, 117
> P.2d 561 (1941), "[a] quasi contract is no more than a
> legal device to enforce noncontractual duties."
> Restitution and unjust enrichment are the modern terms
> for the doctrine of quasi contracts.

See also, Bloomgarden v. Coyer, 479 F.2d 201, 208 (D.C.Cir. 1973)

(a "quasi-contract . . . is not a contract at all, but a duty

thrust under certain conditions upon one party to requite another

in order to avoid the former's unjust enrichment").

A "compensation arrangement" under the Stark Act is a kind of

an agreement between a physician and a health care entity.  It is

not an equitable remedy imposed by a court to prevent unjust

enrichment.  Therefore, plaintiff's unjust enrichment claim will

not necessarily violate the Stark Act if it requires the court to

engage in a fiction at law where there has been no agreement

between the physician and a health care entity.

Defendant makes citation to Early Detection Center v. Wilson,

9

811 P.2d 860 (Kan. 1991) ("EDC"). This case, however, is distinguishable on its facts. In EDC, the plaintiff started as a professional corporation and then became a general corporation. Under Kansas law, professional corporations can provide medical services, general corporations cannot. Nevertheless, the plaintiff continued its business of providing noninvasive vascular testing after it became a general corporation. It sued a former CEO and employee, who was a physician, for breach of contract and breach of fiduciary duty on the grounds that he started a competing business and attracted business away from EDC. The court determined that the case must be dismissed because granting the requested relief would aid an illegal agreement. Here, defendant is not alleging that there is a preexisting illegal agreement between it and plaintiff which would be aided by the court's order. Instead, defendant is arguing that a court order to remedy unjust enrichment would amount to an illegal unwritten agreement. But, as the court has already stated, a contract implied at law or quasi-contract is not an agreement, it is a remedy for unjust enrichment.

Defendant argues that the parties were conscious of the requirements of the Stark Act and contemplated that any compensation agreement for plaintiff's services would be in writing. This argument may provide an equitable reason to reject plaintiff's unjust enrichment claim when considered upon an evidentiary record. But, defendant's argument does not establish

that plaintiff has failed to state a plausible claim for unjust enrichment.  This is what is required to sustain a Rule 12(b)(6) motion.   The court reiterates that the elements of an unjust enrichment claim do not require proof of an agreement or mutual assent of the parties.

Next, defendant argues again that permitting an unjust enrichment remedy would frustrate the purpose of the Stark Act. The Stark Act prohibits physicians who have financial relationships with hospitals from making referrals under certain circumstances to the hospitals for the furnishing of certain health services.  The Stark Act, however, does not by its terms prohibit unwritten agreements or limit the power of a court to issue equitable remedies where there are no agreements.  The Stark Act only carves out an exception from its prohibition of referrals for persons and entities who have certain written personal service arrangements.

Unlike the case authority cited by defendant, this does not appear to be a situation where the field has been occupied or preempted by federal regulation or where there is an express prohibition of unwritten agreements.  Defendant has referred the court to <u>Union Telephone Co. v. Qwest Corp.</u>, 495 F.3d 1187 (10th Cir. 2007).  In that case two telecommunications carriers regulated by the Telecommunications Act of 1996 disagreed regarding compensation due each other for different types of call traffic. The Tenth Circuit decided that relief under the theories of unjust

11

enrichment or quantum meruit was not available because federal law required the parties to set rates through interconnection agreements negotiated privately or through arbitration.  It is not clear to the court that the Stark Act has occupied the field in the same way as the Telecommunications Act of 1996.  Defendant has also cited Ellers, Oakley, Chester & Rike, Inc. v. St. Louis Air Cargo Services, Inc., 984 F.2d 1108 (10th Cir. 1993).  There, the court (applying Missouri law) held that implying a remedy in quantum meruit would frustrate the purpose of a Missouri statute requiring engineering firms (and not just individual engineers within the firms) to be registered in Missouri in order to recover on contracts for work performed inside Missouri.  Again, the court believes this case may be distinguishable because the Stark Act does not directly prohibit unwritten compensation arrangements between doctors and hospitals.  The term "compensation arrangement" includes "any arrangement" including those involving covert remuneration.   § 1395nn(h)(1).   Such arrangements are not prohibited; they simply  must be reported.  Moreover, it is possible to recover for unjust enrichment in Kansas without showing that there was an agreement.  A court-imposed remedy for unjust enrichment where the parties did not have an agreement does not necessarily frustrate a statute allegedly requiring a writing where the parties do have an agreement.

The remaining cases cited by defendant involve straightforward

12

state law requirements that certain contracts be in writing.[2]   The

Stark Act's stipulation that regulates the circumstances under

which physicians may make referrals to entities with whom they have

compensation arrangements is not so straightforward.   Therefore,

those cases are distinguishable from this case.

> B.   <u>Breach of contract</u>

Defendant contends that it is entitled to judgment on the

pleadings as to plaintiff's breach of contract claim because the

contract between plaintiff and defendant was terminated twice.

Defendant argues that the contract was first terminated on May 31,

2005 because defendant gave plaintiff a 90-day notice of

termination, as called for in the written contract, on February 25,

2005.  On April 20, 2005, however, defendant sent plaintiff another

letter stating that the original contract would continue "on a

month-to-month arrangement until our long-term relationship has

been decided and finalized."  Doc. No. 12, Exhibit 3.  Defendant

asserts that this was a new offer which plaintiff accepted and that

the new agreement continued until April 30, 2008 when the new

agreement was terminated after defendant gave a 30-day notice to

plaintiff.

Plaintiff alleges that the parties operated under a valid

---

[2] <u>Maynes Real Estate, Inc. v. McPherron</u>, 353 N.W.2d 425, 427
(Iowa 1984); <u>State Public Defender v. Iowa District Court</u>, 731
N.W.2d 680, 684 (Iowa 2007); <u>Selvage v. Talbott</u>, 95 N.E. 114, 116
(Ind. 1911); <u>Castillo v. Barrera</u>, 53 Cal.Rptr.3d 494, 503 (Cal.App.
2007).

signed agreement through December 22, 2010 which was never officially or effectively terminated prior to that date. Plaintiff further argues that defendant's contentions are contrary to defendant's Stark Act arguments which asserted that any agreement between plaintiff and defendant had to be in writing and have a duration of at least one year.

Defendant's arguments rely upon evidence outside of the pleadings to claim that the contract was terminated pursuant to its original or modified terms. While the court could treat defendant's motion as a summary judgment motion, the court is not convinced that this would be a more efficient or economical way to proceed because neither party has addressed the standards regarding the oral or written modification of contracts or the standards for summary judgment as they might apply to the breach of contract claim.

In Kansas:

[i]t is well settled that the terms of a written contract may be varied, modified, waived, annulled or wholly set aside by any subsequently executed contract, whether such subsequently executed contract be in parol or in writing. One party to the contract cannot unilaterally change the terms thereof. Modification requires the assent of all the parties to the contract. Their mutual assent is as much a requisite in effecting a modification as it is in the initial creation of a contract. Mutual assent may not only be shown by an express agreement but also may be implied from the circumstances and conduct of the parties. In either case, however, there must be a meeting of the minds with respect to the proposed modification.

Fast v. Kahan, 481 P.2d 958, 961 (Kan. 1971) (interior citations

14

omitted).   The   facts   which   relate   to   these   standards   are   not
clearly uncontroverted at this stage; therefore  summary judgment
is not proper.

As it stands, the amended complaint states a plausible cause
of action for breach of contract.   Therefore, the court shall deny
defendant's motion to dismiss or for judgment on the pleadings as
to plaintiff's breach of contract claim.

C.   <u>Tortious interference with a prospective business
advantage</u>

In Count III of the amended complaint, plaintiff alleges a
claim of tortious interference with a prospective business
advantage.   Plaintiff claims that in March 2009 he was engaged in
negotiations to work for a different health care entity when
defendant "insisted" that plaintiff forego that opportunity and
misled him into thinking that "they were in the process of working
out an arrangement with [p]laintiff."   Doc. No. 10 at ¶ 21.
Defendant argues generally that plaintiff has failed to plead facts
which make it plausible that plaintiff could prove the elements of
a claim for tortious interference with a prospective business
advantage.   Defendant further argues that this claim must be
dismissed because:  1) the amended complaint fails to allege that
defendant had any contact with a prospective employer of plaintiff;
2) plaintiff failed to allege that defendant acted with malice; 3)
plaintiff voluntarily gave up the prospective business advantage;

15

4) any "interference" by defendant was justified by the reasons which support a business competitor privilege as set out in DP-Tek, Inc. v. AT&T Global Information Solutions Co., 100 F.3d 828 (10th Cir. 1996) and RESTATEMENT (Second) OF TORTS § 768 (1977).

Plaintiff contends that the amended complaint satisfies the standards applied to a Rule 12(b)(6) motion and that there are material fact issues as to whether defendant acted maliciously, whether plaintiff walked away voluntarily from the prospective business deal, and whether there was unjustified interference by defendant.

Kansas courts have followed the RESTATEMENT (Second) OF TORTS § 766B (1977) when considering claims of tortious interference with a prospective business advantage. Noller v. GMC Truck and Coach Division, 772 P.2d 271, 276 (Kan. 1989). Section 766B provides:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of:
>     (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>     (b) preventing the other from acquiring or continuing the prospective relation.

Kansas courts have often set forth the following elements for a claim of tortious interference with a prospective business advantage:

> 1) the existence of a business relationship or expectancy with the probability of future economic benefit to defendant; 2) knowledge of the relationship or expectancy

16

by the defendant; 3) a reasonable certainty that but for defendant's conduct, plaintiff would have continued the relationship or realized the expectancy; 4) intentional misconduct by the defendant; and 5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.

E.g., <u>Turner v. Halliburton</u>, 722 P.2d 1106, 1115 (Kan. 1986); <u>DP-TEK</u>, 100 F.3d at 831-32; <u>PulseCard, Inc. v. Discover Card Services, Inc.</u>, 917 F.Supp. 1488, 1498 (D.Kan. 1996).

These elements do not include a requirement that the defendant communicate with a third party to induce the third party not to engage in a business relationship with the plaintiff, although, as defendant notes, some cases have said this is a requirement. E.g., <u>Altrutech, Inc. v. Hooper Holmes, Inc.</u>, 6 F.Supp.2d 1269, 1276 (D.Kan. 1998); <u>PulseCard</u>. Nor does Section 766B of the Restatement set out such a requirement. In an unpublished order, the Tenth Circuit has said that third party communication is <u>not</u> a required element of tortious interference with a prospective business relationship in Kansas. <u>Pepsi-Cola Bottling Co. v. Pepsico, Inc.</u>, 2006 WL 925606 (10th Cir. 4/11/2006). So, the court rejects defendant's argument that plaintiff's tortious interference claim must be dismissed because the amended complaint does not allege that defendant communicated with a third party prospective employer to cause plaintiff damages.

Nevertheless, the court agrees with defendant that plaintiff has failed to plead facts which establish that it's plausible that plaintiff can succeed upon a claim of tortious interference with a

17

prospective business relationship.   The above-stated elements of this claim must be construed with the Restatement section in mind. The "intentional misconduct" referred to in the fourth element must be "interference" which either induces or causes a third person not to enter into or continue a business relationship or which prevents plaintiff from acquiring or continuing a business relationship. The amended complaint does not allege facts which indicate that it is plausible plaintiff can prove that defendant induced or caused a third person not to enter into or continue a business relationship with plaintiff or that defendant prevented plaintiff from acquiring or continuing such a relationship.   As defendant contends, the amended complaint does not allege any inducement directed at a third party and it does not allege an action which "prevented" as opposed to persuaded plaintiff from acquiring or continuing a prospective business opportunity.   "Prevent" is commonly defined as to stop or hinder.   WEBSTER'S NEW COLLEGIATE DICTIONARY 912 (1975); BLACK'S LAW DICTIONARY (9TH ed. 2009).   Being misled by someone into thinking that an employment contract will be arranged is an inducement not to agree to a contract with a third person.   It is not a hindrance to agreeing to an employment contract with a third person.

The Restatement lists as case examples of being "prevented" from entering a business relationship situations in which:   a hospital refused to permit a nurse to render private nursing

services to patients in the hospital (<u>Byars v. Baptist Medical Centers Inc.</u>, 361 So.2d 350, 356 (Ala. 1978)); a sign was removed indicating a new location for a business (<u>Twins Falls Farm & City Distributing Inc. v. D & B Supply Co.</u>, 528 P.2d 1286, 1294 (Idaho 1974)); and a bank cut off funds in a bank customer's account (<u>Farmers Coop. Elevator v. State Bank</u>, 236 N.W.2d 674, 679 (Iowa 1975)).  The amended complaint does not describe conduct of this type.  The Restatement also makes reference to <u>Goldstein v. Kern</u>, 267 N.W.2d 165 (Mich.App. 1978) where a fact situation similar to this case is described.  In <u>Goldstein</u>, the plaintiff was offered employment by a competitor of the defendant.  When the defendant was informed of this offer and of plaintiff's desire to accept it, the defendant offered plaintiff a partnership interest in a store defendant was opening.  Plaintiff turned down the offer from the defendant's competitor.  But, six months after the store was opened, defendant sold the store and terminated plaintiff's employment without consulting plaintiff.  The court held there was no cause of action stated for interference with a prospective business advantage.

For the above-described reasons, the court finds that plaintiff has failed to state a claim for tortious interference with a prospective business advantage.  The court shall not reach the other arguments defendant has posed against this claim.  Unless plaintiff asks within ten days to amend the amended complaint to

include an allegation better establishing a plausible claim that defendant induced a third person not to enter into or continue a business relationship with plaintiff or prevented plaintiff from acquiring or continuing a prospective business relationship, the court shall dismiss plaintiff's tortious interference claim.

D.   Subject matter jurisdiction

Finally, defendant argues that this court lacks subject matter jurisdiction because plaintiff cannot establish, for the reasons defendant previously asserted, that plaintiff is able to recover upon any of his alleged claims for relief.  The court has denied defendant's arguments for dismissing plaintiff's unjust enrichment and breach of contract claims.  Therefore, the court shall reject defendant's jurisdictional contention.

V.   Conclusion

Defendant's motion to dismiss or for judgment upon the pleadings (Doc. No. 17) shall not be treated as a summary judgment motion.  The motion shall be granted as to plaintiff's claim for tortious interference with a prospective business advantage unless plaintiff within ten days asks for leave to amend the amended complaint.  The motion shall be denied as to plaintiff's unjust enrichment and breach of contract claims.  Defendant's motion to dismiss the original complaint (Doc. No. 6) shall be considered moot.

**IT IS SO ORDERED.**

Dated this 16th day of December, 2011 at Topeka, Kansas.

                         s/Richard D. Rogers
                         United States District Judge